STATE OF NORTH CAROLINA v. HAROLD BERNARD WILLIAMS

No. 103

(Filed 5 May 1981)

### 1. Criminal Law § 76.7— admissibility of confession

The trial court properly denied defendant's motion to suppress oral and written statements given by him to the police where the court made findings supported by the evidence that defendant was properly advised of his constitutional rights prior to answering any questions by the police; no threats were made against him; no unfulfilled promises were made to him before he signed the written statement; and he knowingly, voluntarily, and understandingly waived his constitutional rights.

### 2. Criminal Law § 43.1— admissibility of photograph of defendant

A photograph of defendant taken at the police station would have been admissible in evidence even if he had not consented to the taking of the photograph.

### 3. Criminal Law § 128.2— questions by prosecutor—motion for mistrial

In this prosecution for rape in which defendant admitted on cross-examination that he had been convicted of assault with intent to commit rape in 1970, the trial court did not abuse its discretion in refusing to declare a mistrial because the district attorney asked the black defendant several questions suggesting that he had previously raped a young white girl the same age as the victim in the present case where the court sustained defendant's objection to every such question and no evidence was ever elicited by such line of questioning.

### 4. Criminal Law § 122.2— statement by trial court—no coercion of verdict

The trial court did not coerce a verdict when the jury returned to the courtroom at 1:00 p.m. after deliberating for some period of time and requested to be allowed to examine an exhibit, the court told the jury that ". . . this is the last jury case of the week and when you finish this case, you'll be through for the week. If you feel like it's going to take some time, I'll be glad to let you come back after lunch or if you feel like you're close to a verdict, I'll be glad to let you go back and continue," the foreman responded that the jury would like to have lunch, the court at 1:29 p.m. ordered a recess until 2:45 p.m., and the jury resumed their deliberations at 2:45 p.m. and returned verdicts of guilty at 3:14 p.m.

APPEAL by defendant from judgments entered by *Collier, J.,* at the 23 September 1980 Criminal Session of FORSYTH Superior Court.

Upon pleas of not guilty, defendant was tried on bills of indictment which charged him with kidnapping and raping Deena

Louise Darnell on 8 March 1980. Evidence presented by the state is summarized in pertinent part as follows:

On the date in question Miss Darnell was 17 years old and a senior at Salem Academy in Winston-Salem. On the evening of that date, she carried one of her friends in her parents' automobile to a tavern. On the way back to Salem Academy, she stopped at a service station to buy a soft drink. As she was returning to her car from the drink machine, she saw a man, whom she later identified as defendant, coming towards her. She entered the car and tried to close the door but the man stuck his umbrella handle in the door and pulled out a gun.

Defendant told Miss Darnell that he wanted money and got into the backseat of the car. At gunpoint he required her to drive to a nearby high school. There he ordered her to get out of the car and go with him to a field near the school. Upon arriving at that place, he ordered her to remove her clothing, and when she refused, he began removing them himself. He forced her to lie down on the ground where he proceeded to have vaginal intercourse with her.

After having considerable conversation with Miss Darnell, and receiving assurances from her that she would not tell the police, defendant permitted her to return to her car. Following his directions she then drove him to what she thought was a park where he got out of the car.

Miss Darnell immediately returned to Salem Academy where she told her roommate what had happened. They called the police, and she was taken to a hospital for an examination. The following afternoon, Miss Darnell went with police to the place where she was raped. At the site police found a leather billfold containing cards and pictures which indicated that it belonged to defendant.

On 25 March 1980 police talked with defendant. Following questioning, he admitted that he was the person who accosted Miss Darnell at the service station; that he went with her to the field near the school; and that he had intercourse with her. He gave the police a written statement.

Defendant presented evidence, including his own testimony, tending to show that he was at home on the night in question;

that he was forced to sign a confession; and that he never saw Miss Darnell before the preliminary hearing in this case.

The jury returned verdicts finding defendant guilty as charged. The court entered judgments imposing two consecutive life sentences.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Joan H. Byers, for the state.*

*Jack E. Ruby for defendant-appellant.*

BRITT, Justice.

[1] By his first assignment of error, defendant contends the trial court erred in denying his motion to suppress the oral and written statements given by him to the police, as well as the photograph of him which was taken at the time of his questioning. We find no merit in this assignment.

At the hearing on defendant's motion to suppress, Detective R. H. Tilley of the Winston-Salem Police Department testified that on the morning of 24 March 1980 he and Detective R. V. Venable went to the residence of defendant; that defendant responded to his knock on the door and asked what they wanted; that they identified themselves as police officers, told defendant they were investigating a kidnapping-rape case and would like for him to go with them to the police station and talk with them; that defendant voluntarily went with them; that after they arrived at the police station, defendant was read his *Miranda* rights; that defendant agreed to answer questions and stated that he did not want to talk with a lawyer and have him present during questioning; that defendant signed a written waiver of his rights; that after a period of questioning, defendant made and signed the incriminating statements proposed to be introduced into evidence; and that defendant gave his permission for the police to take his picture.

Defendant testified at the hearing. He stated that he was forced to go to the police station; that he did not understand what the officers read to him at the station; that the officers told him that the cases would not be prosecuted; and that he signed a paper on the promise that the police would help him get a job.

At the conclusion of the hearing, the court made findings of fact which were consistent with the testimony of Detective Tilley. The court also made conclusions of law that defendant was properly advised of his constitutional rights prior to answering any questions by the police; that no threats were made against him; that no unfulfilled promises were made to him before he signed the statement which he gave to police; and that he knowingly, voluntarily, and understandingly waived his constitutional rights.

The trial judge properly conducted a hearing in the absence of the jury on defendant's motion to suppress evidence relating to the statements in question, and at the conclusion of the hearing he made findings of fact and conclusions of law. G.S. § 15A-977 (1978). The findings of fact made by the judge are conclusive if supported by competent evidence. *State v. Freeman,* 295 N.C. 210, 244 S.E. 2d 680 (1978); *State v. Braxton,* 294 N.C. 446, 242 S.E. 2d 769 (1978); *State v. Jones,* 293 N.C. 413, 238 S.E. 2d 482 (1977). We hold that the findings are amply supported by competent evidence and that they fully support the conclusion of law that the statements were admissible into evidence.

[2] The photograph of defendant was also admissible into evidence. While testimony at the hearing showed that he consented to the police taking his photograph, it would have been admissible even if he had not consented. This court held in *State v. McDowell,* 301 N.C. 279, 271 S.E. 2d 286 (1980), that a defendant's fifth amendment privilege against self-incrimination was not violated when he was photographed in a parole office, and that the fourth amendment offers no shield for that which an individual knowingly exposes to public view.

[3] By his second assignment of error, defendant contends the trial court erred in not declaring a mistrial when the district attorney asked him several questions suggesting that he, a black man, had previously raped a young white girl the same age as Miss Darnell. This assignment has no merit.

On cross-examination defendant admitted that on 9 September 1970 he was tried and convicted of assault with intent to commit rape. The record then reveals the following:

Q. And you got the maximum sentence allowed by law, didn't you?

MR. HABEGGER: Objection to that, Your Honor.

THE COURT: Sustained.

Q. The victim in this—that case was a 17 year old white high school student, wasn't it?

MR. HABEGGER: Objection.

COURT: Sustained.

Q. Sir?

MR. HABEGGER: Your Honor, objection. Move to strike, Your Honor.

THE COURT: Sustained.

Q. Do you know Donna Duncan?

MR. JOHNSON: Your Honor, object. May we approach the bench?

THE COURT: Yes.

(Mr. Lyle, Mr. Habegger and Mr. Johnson approach the bench.)

Q. (By Mr. Lyle) Do you know Donna Duncan?

MR. JOHNSON: Object, Your Honor.

THE COURT: Sustained.

Q. In 1970, you gave an officer a statement in that case.

MR. JOHNSON: Object to that, Your Honor.

THE COURT: Sustained.

Q. Did you tell the officers that you had done that 1970 case?

MR. JOHNSON: Your Honor, object.

THE COURT: Sustained. Go to some other question.

Q. Did you plead not guilty in that case, Mr. Williams?

MR. JOHNSON: Your Honor, object.

THE COURT: Sustained.

State v. Williams

Defendant argues that the district attorney was trying to show that since defendant had been convicted of committing a sexual offense against another white girl, the same age and with the same initials as Miss Darnell, it would be logical for the jury to believe that defendant committed this offense also. We are not impressed with this argument.

We note that defendant did not move for a mistrial until after the jury had returned the verdict. Even then defendant offered no ground for his motion. In any event, granting a motion for a mistrial is a matter within the discretion of the trial judge. *E.g, State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977). We perceive no abuse of discretion in this instance.

A defendant who elects to testify in his own behalf is subject to impeachment by questions relating not only to his conviction of crime but also to any criminal or degrading act which tends to discredit his character and challenge his credibility. *E.g., State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977). In *Foster* this court observed: "Whether the cross-examination transcends propriety or is unfair is a matter resting largely in the sole discretion of the trial judge, who sees and hears the witnesses and knows the background of the case. His ruling thereon will not be disturbed without a showing of gross abuse of discretion. (Citation omitted.)" *Id.* at 685, 239 S.E. 2d at 457.

The record indicates that the trial judge sustained defendant's objection to every question about which he now complains and that he granted defendant's motion to strike. It is clear that the court did not abuse its discretion in denying the motion for mistrial because no evidence was ever elicited by the line of questioning.

[4] By his third and final assignment of error, defendant contends the trial judge gave the jury an instruction that tended to rush them in their deliberations. We find no merit in this assignment.

The record reveals that on 25 September 1980 at around 1:00 p.m., after they had deliberated for some period of time, the jury returned to the courtroom and inquired if they might review the contents of the billfold found at the site of the alleged rape. There being no objection by the state or the defendant, the court al-

State v. Williams

lowed the request. The court then made the following statement to the jury:

> Now, members of the jury, I do not want you to feel that I'm trying to rush you into a quick verdict by keeping you here, but this is the last jury case of the week and when you finish this case, you'll be through for the week. If you feel like it's going to take some time, I'll be glad to let you come back after lunch or if you feel like you're close to a verdict. I'll be glad to let you go back and continue.

The foreman responded that they would like to have lunch, The court, after giving the usual instructions to the jury not to discuss the case with anyone during the lunch break, at 1:29 p.m. ordered a recess until 2:45 p.m. The jury resumed their deliberations at 2:45 p.m. and at 3:14 p.m. returned the verdicts.

Defendant argues that the quoted statement by the court might have "hurried those jurors who had a reasonable doubt (about defendant's guilt) into changing their opinion." He also notes that the court failed to instruct the jury that no one of them should surrender his conscientious convictions or his free will and judgment in order to agree upon a verdict, citing *State v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767 (1966).

We do not find defendant's argument persuasive. While we recognize the principle that a trial judge should not coerce a verdict or intimidate a jury, *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978), the quoted statement simply does not rise to the level of coercion or intimidation. The record does not disclose how long the jury had deliberated but it does show that the statement was made at a relatively late lunch hour. Under such circumstances, the court was fully justified in making the statement. *See State v. Cousin,* 292 N.C. 461, 233 S.E. 2d 554 (1977).

We conclude that defendant received a fair trial free from prejudicial error.

No error.