**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Johnny WILLIAMS, Defendant-Appellant.**

**No. 80–7790.**

United States Court of Appeals, Fifth Circuit.

Unit B

June 12, 1981.

Frank J. Petrella, Atlanta, Ga., for defendant-appellant.

William Sutton, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL, FAY and HENDERSON, Circuit Judges.

PER CURIAM:

In this appeal we are once again asked to determine whether evidence taken pursuant to one of the unerring hunches of the ubiquitous Agent Paul Markonni should have been suppressed on the ground that it was taken in violation of the Fourth Amendment. Without wholeheartedly endorsing the drug courier profile method of detection, *see United States v. Pulvano*, 629 F.2d 1151, 1151 n.1 (5th Cir. 1980), we affirm appellant's conviction for possession with intent to distribute a controlled substance, holding that denial of the motion to suppress was not error.

On March 20, 1980, Special Agent Paul Markonni of the Drug Enforcement Administration and Atlanta Police Officer Burkhalter were in Atlanta International Airport observing passengers deplaning from Delta Airlines flight 260 arriving from Miami at gate 68. Their advance knowledge at this point was that Miami was a significant cocaine distribution area. Appellant Johnny Williams was among the deplaning passengers. Williams was carrying a small tote bag which did not appear to be full. Markonni observed that Williams walked away from the gate at a rapid pace and glanced twice back at the departing gate. On the basis of this highly suspicious behavior, Markonni decided to follow Williams to see if he claimed any other luggage or took a flight to another city. Instead of claiming luggage, appellant exited the terminal on the upper level. Once outside, appellant quickly looked around as if he expected to be met and then started to cross several lanes of traffic toward the short term parking lot. At that point, Markonni walked up beside appellant, displayed his credentials and asked appellant if he could talk with him for a few minutes. It had taken just four minutes for Agent Markonni to select his target.

After identifying himself as a federal law enforcement officer, and after appellant agreed to speak to him, Markonni asked to see appellant's airline ticket. Appellant opened his tote bag and produced the ticket, a round trip ticket from Atlanta to Miami and returning. The ticket indicated that appellant had flown to Miami two nights earlier. No baggage claim tickets were attached. At this point appellant began to appear "extremely nervous." He could produce no identification other a telephone bill which listed charges for ten phone calls made from an Atlanta number to two Miami numbers. No subscriber's name appeared on the bill. Markonni advised appel-

lant that he was a narcotics officer searching for contraband and asked appellant if he was carrying drugs on his person or in the bag. In reply appellant said he had none and "kind of laughed a little bit as if to say he was not or it was a joke or something like that." (Tr. 19).

Markonni asked appellant if he would have any objection to a search of either himself or his bag. Appellant inquired as to why Markonni thought he might be carrying drugs. Markonni's response was that appellant ought to allow the search if he were not carrying drugs and that after he had conducted the search, he would explain his reasons for the stop. Markonni gave appellant the option of being searched outside the terminal or in a more private place. Appellant elected the latter.

In the airport police precinct area on the lower level, Markonni read the following from a card:

> You have the right to allow or refuse to allow a search to be made of your person and the personal property that you have with you. You have the right to consult an attorney before deciding whether you wish to allow or refuse to allow the search. If you consent to the search any illegal objects found can be used against you in court proceedings. Do you understand?

Markonni testified that he advised appellant that he had a right to consult an attorney before he allowed the search. On patting down appellant, Markonni felt two unnatural substances on appellant's abdomen and reached into appellant's trousers to remove two plastic bags containing cocaine.

At the suppression hearing before a United States Magistrate, appellant stated that he did, in fact, give the agent consent on the upper level but felt that his consent extended only to the tote bag. He testified that he thought he was under arrest and that once he got to the lower level police station, he did not feel he could withdraw his consent. He saw no advantage to himself in resisting.

The magistrate found, based on his reading of the decision of the Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) that there were not reasonable grounds to justify a stop of appellant and the stop was therefore illegal.[1] He concluded, however, that appellant's consent to the search after having been fully advised of his rights dissipated the taint of the evidence. Said the magistrate, "The law simply cannot function if litigants, absent unusual circumstances, are allowed to plead that they simply did not believe clear explanations of rights and obligations which they received and comprehended." (R. 110).

The district court, in affirming the denial of the motion to suppress, agreed that consent to the search of the person and the bag had vitiated the taint of any illegal stop. The district judge, however, disagreed with the conclusion of the magistrate regarding the initial stop. In dictum, he stated that *Mendenhall* should not be read as a clear statement that an airport stop requires reasonable suspicion. Appellant waived his right to jury trial and the matter was submitted to the trial court for a finding as to guilt. Appellant was found guilty and sentenced to serve ten years in the custody of the Attorney General to be followed by a

1. It is clear that the magistrate was bothered by the same thing that bothered this Court in *Pulvano*, that is, the airport stop attaches criminal significance to apparently normal behavior. The magistrate said:

> This Magistrate would most heartily agree with those Justices finding the existence of a seizure under similar circumstances. Because of the officer's conduct, which was clearly more accusatorial than inquisitorial, Williams reasonably believed that he was detained. The officer in fact intended to detain him. The pattern of these cases irrefutably

demonstrates that a part and parcel of the Drug Courier Profile Program is to detain a suspect long enough to gather evidence which either corroborates or allays earlier suspicion. In this respect, this court can see no difference between what Markonni does and what the officer in *Terry* did. Finally, of course, when Markonni approaches his suspects, they are already the focus of a criminal investigation and are not merely citizens that he wishes to interview concerning possible misconduct by others. (R. 109).

special mandatory parole of three years. The sentence was suspended and the defendant ordered to serve six months in a minimum security facility followed by five years' probation.

We agree with the district court that not every contact between citizen and police is a "seizure" within the meaning of the Fourth Amendment. *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979), *cert. denied*, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980). The Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) did not resolve the question whether the initial questioning of citizens pursuant to a drug courier profile is a seizure within the meaning of the Fourth Amendment, nor does the more recent case of *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam). *See United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980). It is clear from *Elmore* that at the time appellant was stopped on the upper level, there was no "seizure." Appellant voluntarily cooperated, searching through his tote bag for the ticket and the phone bill and choosing to go with the agent to the lower level. There is no evidence of coercion, force, or other use of authority. Once inside the lower level police station, appellant again consented to the search after he had been informed of his right to refuse. The magistrate specifically found that the consent was voluntary. The mere fact that appellant could see no benefit to himself in resisting does not make the act involuntary. The question of voluntariness is a question of fact to be determined in the totality of circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The concurrence of the district court in the finding of voluntariness will not be disturbed unless clearly erroneous. *United States v. Troutman*, 590 F.2d 604 (5th Cir. 1979); *cf. United States v. Garcia*, 496 F.2d 670, 674 (5th Cir. 1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975).

Appellant's conviction is AFFIRMED.