**UNITED STATES of America**

v.

**Hilario MEDINA–PENA.**

**Crim. No. B–81–389.**

United States District Court,
S. D. Texas,
Brownsville Division.

Aug. 19, 1981.

E. Daniel Ramirez, Asst. U. S. Atty., Brownsville, Tex., for plaintiff.

Juan E. Gavito, Federal Public Defender, Brownsville, Tex., for defendant.

## MEMORANDUM AND ORDER

VELA, District Judge.

Came on to be heard Defendant's Motion to Suppress Evidence and Motion for Judgment of Acquittal. This Court, having considered the same, is of the opinion that said motions should be DENIED, for the following reasons.

## FINDINGS OF FACT

Border Patrol Officers Michael Johnson and Juan Contreras were conducting a farm and ranch check on the 26th day of May, 1981, a routine operation designed to appre-

hend illegal aliens in the rural areas of Hidalgo County. While en route from one rural area to another, the officers were traveling through Edinburg, Texas in a Border Patrol vehicle. As they passed in front of the Three Star Muffler Shop, Officer Johnson spotted three men standing out in front of the shop. All three men appeared to be of Mexican descent. Two of the men looked at the officers while the other man glanced at the officers and then turned away. Officer Johnson noticed that the man who had turned away was dressed differently than the other two in that his clothes seemed to be of poorer quality. He also seemed "dirtier" than the other two men. Based upon these observations, Officer Johnson suspected that the man was an alien who was in this country illegally. The Officers stopped in front of the muffler shop in order to question the man who had glanced away. Both officers were in uniform.

Upon questioning, the Officers determined the man to be an undocumented alien who claimed to have been apprehended the day before and to have been given a form entitling him to remain in the country for 48 hours before deportation. The Officers questioned the other two men and found them to be in the country legally. Officer Contreras then went to radio the Border Patrol Office in order to confirm the claim made by the undocumented alien.

During the questioning, Officer Johnson had noticed that one of the men working under a lift in the muffler shop had left his stall and had gone out of the officer's sight, either to the manager's office or to a storeroom. The worker appeared to be of Mexican descent. After Officer Johnson had finished the questioning and while waiting for confirmation of the undocumented alien's claim, Johnson noticed that the worker who had left the stall had not returned, it having been five minutes or more since he had left. Officer Johnson went to look for the man at the manager's office, but did not find him there. After determining that there was a storeroom in back, Officer Johnson informed the manager that he was going in to the storeroom to look for

that worker. As Officer Johnson approached the storeroom, the missing worker walked out of it without any tools or materials in his hands.

Officer Johnson asked the worker for his citizenship and for identification, whereupon the worker produced an alien registration card and a social security card, both identifying him as Hilario Medina-Pena. Upon inspection of the alien registration card, Officer Johnson determined that it was counterfeit. Officer Johnson then took Hilario Medina-Pena into custody and informed him of his *Miranda* rights.

## CONCLUSIONS OF LAW

There is no question that once Officer Johnson obtained the counterfeit alien registration card, there was probable cause to arrest Medina-Pena. The activity leading up to that point is the basis of this memorandum.

First, it must be determined whether the initial contact between Officer Johnson and the defendant constituted a seizure within the meaning of the Fourth Amendment. If it did, then the standard requiring reasonable suspicion based upon specific and articulable facts for limited searches and seizures, announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and developed and extended in its progeny, specifically *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), would apply.

■ Not every contact between law enforcement officers and other persons involves a seizure. *Terry v. Ohio, supra*, 392 U.S. at 19, n.16, 88 S.Ct. at 1879, n.16. A person is seized under the Fourth Amendment only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (holding unclear). This standard is an objective one. It was perhaps best explained in *United States v. Wylie*, 569 F.2d 62, 68 (D.C.Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542, wherein Circuit Judge McGowan observed:

. . . the crucial consideration is . . . whether the person was "under a reasonable impression that he [was] not free to leave the officer's presence." We would only add that in determining whether such a reasonable impression existed, the test must be " 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' "

The Fifth Circuit, following the standard set forth in *United States v. Mendenhall, supra*, has held that certain investigative stops for the purpose of questioning passengers in airports, by D.E.A. agents, are not seizures. *United States v. Williams*, 647 F.2d 588 (5th Cir. 1981); *United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980). In these cases the stops were effectuated without the use of force, physical restraint, or a blatant show of authority by the officers involved, the use which would require a finding that a seizure occurred. *See United States v. Elmore*, 595 F.2d 1036, 1041 (5th Cir. 1979), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861.

■ The facts in this case indicate that there was no force or physical restraint used by Officer Johnson in his encounter with the defendant. There was, of course, a show of authority. The officer was in uniform with the usual sidearm. He did not identify himself to Medina-Pena, but instead requested proof of Medina-Pena's status in the country with no prefatory statements or inquiries. The question is whether that show of authority was sufficient to convey to a reasonable man, innocent of any crime, the impression that he was not free to leave the officer's presence.

In view of Medina-Pena's illegal status in the country and his cultural and social background, it is quite likely that he was under the impression that he was not free to leave once Officer Johnson approached him and began to address him. However, after a careful weighing of the facts presented and the circumstances surrounding the encounter, this court finds that a reasonable man, innocent of any crime, would not have felt compelled to remain and answer Officer Johnson's questions. Thus, there was no seizure involved in this encounter and no need for reasonable suspicion based upon articulable facts. *See United States v. Mendenhall, supra*, 446 U.S. at 553, 100 S.Ct. at 1876–77; *see generally Terry v. Ohio, supra*.

■ That is not to say that an officer may approach any likely-looking person on the street and question him as to his citizenship and/or his right to be in the country. An individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1978). Although a law enforcement officer may question a person as to that person's possible criminality without seizing him, the questioning in and of itself does intrude into an individual's reasonable expectation of privacy. The intrusion may be a minor one. Nonetheless, the public interest in questioning the individual must outweigh the intrusion, however minor, into the individual's reasonable expectation of privacy. *Cf. Brown v. Texas, supra*, at 50, 51, 99 S.Ct. at 2640, 2641 (sets out balancing test in which the public concerns served by a seizure are weighed against the severity of the interference with individual liberty).

■ In the instant case, Officer Johnson observed a likely-looking person whose actions conformed, in Officer Johnson's subjective estimation based upon his experience, with the actions that an undocumented alien worker might undertake. Adding to this the fact known to Officer Johnson that undocumented aliens had been apprehended working in the McAllen Three Star Muffler Shop, this constituted enough facts and inferences to support a reason to investigate by questioning the person. In other words, the public interest in questioning Medina-Pena outweighed the minimal intrusion into his reasonable expectation of privacy.

■ Such was not the case with the original stop and questioning of the three individuals in front of the muffler shop. A

person's appearance and some action on his part that is just as consistent with innocent behavior as with possible criminality, *without more*, does not provide sufficient public interest in halting criminal activity, to outweigh the reasonable privacy expectation. However, that privacy expectation was not Medina-Pena's and thus he has no standing to complain about the original stop.

For the aforesaid reasons, this Court hereby DENIES Defendant's Motion to Suppress Evidence and Motion for Judgment of Acquittal.

ORDERED, ADJUDGED, and DECREED on this the 19th day of August, 1981.