STATE OF NORTH CAROLINA v. THOMAS EDWARD CASEY

No. 8226SC83

(Filed 19 October 1982)

1. **Searches and Seizures §§ 10, 18— detention of suspect justifiable—search and seizure of controlled substances pursuant to consent**

   Although defendant's behavior fit within "drug courier profile" in that he (1) arrived at an airport from a "source city," (2) was in a hurry and (3) exchanged packages with another person without verbally greeting him but by holding up a newspaper headline for him to read, two agents could not have reasonably suspected the defendant of criminal activity based on the observed circumstances since the conduct was "too slender a reed" to support a seizure. However, where defendant assented to a series of requests by the officers, was not coerced, threatened or arrested, agreed to accompany the officers to

the basement, and was specifically informed that he was not under arrest, the evidence was sufficient to support the court's finding that defendant voluntarily consented to go to an office. Therefore, the evidence obtained during a subsequent search was not tainted by an unlawful seizure, despite the lack of reasonable suspicion on the part of the officers.

**2. Searches and Seizures § 13— search of luggage—consent**

The evidence supported the trial court's finding that defendant voluntarily consented to the search of bags which he was carrying where it tended to show that (1) defendant denied ownership in the bags, (2) the alleged owner of the bags was asked for his consent and it was given, and (3) upon being advised that the alleged owner had consented and that defendant could still refuse to consent to a search, defendant agreed that the officers could search the bags in his possession.

**3. Narcotics § 4— possession of a controlled substance with intent to sell or deliver—sufficiency of evidence**

The evidence was sufficient to withstand defendant's motion to dismiss on the charge of possession of a controlled substance with intent to sell or deliver in violation of G.S. 90-95 where the evidence tended to show that defendant had at least actual physical possession of and dominion over a plastic bag in which a controlled substance was found and where defendant's knowledge of the controlled substance and defendant's intent to sell or distribute the controlled substance could easily be inferred from the circumstances.

Judge VAUGHN concurring.

APPEAL by defendant from *Snepp, Judge.* Judgment entered 20 August 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 2 September 1982.

Defendant, Thomas Edward Casey was charged with possession of LSD, a controlled substance, with intent to sell or deliver in violation of the North Carolina Controlled Substance Act, G.S. 90-95. Prior to trial, defendant moved to suppress the evidence which he alleged was taken from a set of bags in his possession pursuant to an unlawful, warrantless search and seizure at Douglas Municipal Airport, Charlotte, N.C. A suppression hearing was held, and after hearing testimony presented by the State, the trial court denied defendant's motion to suppress. Defendant appeared for trial and moved to dismiss at the close of the State's evidence. The motion was denied and the jury found the defendant guilty of the offense of possession of LSD with intent to sell and deliver. From the denial of his motions, defendant appeals.

Defendant presents two questions for review. I. Whether there was sufficient evidence at the hearing on defendant's mo-

tion to suppress to support the findings of fact and conclusions of law that defendant had disclaimed ownership of the bags, had no reasonable expectation of privacy as to their contents, and that defendant freely and voluntarily consented to a search of the bags. II. Whether the trial court committed reversible error by denying defendant's motion to dismiss when there was insufficient evidence before the court that the bags searched were those of the defendant or that the defendant had knowledge of their contents.

*Attorney General Edmisten, by Assistant Attorney W. Dale Talbert, for the State.*

*B. R. Batts, for defendant appellant.*

JOHNSON, Judge.

I

Casey contends (1) that he was unlawfully seized in violation of his Fourth Amendment rights when he was taken to the officer's private office in the basement of the airport for an "investigatory detention" that was (a) not based upon probable cause and (b) neither brief nor based upon reasonable suspicion; (2) that his "voluntarily" accompanying the officer was not relevant; (3) that his consent to a search of the bags he carried was not voluntarily given but rather a result of the illegal stop and seizure and that; (4) the lack of probable cause to seize the bags and the implied threat that an illegal search would ensue regardless, precludes a finding that defendant's denial of ownership was a voluntary abandonment or that the disclaimer of ownership extinguished his reasonable expectation of privacy in the area searched. Hence, any evidence or consent obtained from defendant after his illegal detention was certainly the product of the "poison tree" (sic).

The trial court held a *voir dire* on the defendant's motion to suppress at the close of which it made findings of fact and conclusions of law. The findings of fact made by the court are conclusive on appeal if supported by competent evidence. *State v. Williams,* 303 N.C. 142, 277 S.E. 2d 434 (1981); *State v. Freeman,* 295 N.C. 210, 244 S.E. 2d 680 (1978).

The evidence presented by the State on *voir dire* tended to show that the defendant was observed meeting Donnie Joe Sport at the end of a concourse at Charlotte's Douglas Airport by Jack Davis, a SBI Agent and D. R. Harkey, a Charlotte Police Officer, who were on duty at Douglas Municipal Airport for the purpose of narcotics surveillance. Both officers had been trained by the Federal Drug Enforcement Administration in the art of intercepting domestic airline passengers suspected of acting as drug couriers smuggling narcotics into the Charlotte area from other "source cities" in this country.

Officer Harkey testified that they were "taught to be on the lookout for anything that strikes us as unusual among people that are deplaning flights, people that are in a hurry, people that exchange baggage or packages without a lot of conversation. That is one thing we look for on incoming flights. We were told to screen the flights from source cities, which we did, just to be on the lookout for suspicious behavior that would draw our attention to individuals."

The officers' attention was attracted to defendant Casey because he held a newspaper headline up for Sport to read rather than saying hello. The officers then observed Sport push a yellow plastic bag and briefcase into defendant's hand as they walked together towards the baggage claim area. Agent Davis heard Casey give directions to his car to Sport. No other conversation took place.

As Casey left the terminal, the officers approached him and asked if they could speak with him. Casey agreed. The officers then identified themselves as police officers conducting a narcotics investigation. According to Agent Davis, Casey became "visibly nervous" as he provided the officers with his identification. When asked if the bags were his, Casey stated, "No." Officer Harkey asked Casey first if he was carrying any contraband in the plastic bag or briefcase and then whose bags he was carrying. Casey stated they were Mr. Sport's bags. Officer Harkey then left to talk with Sport and Agent Davis asked defendant if he would accompany him to a basement office inside the terminal. Davis advised Casey he was not under arrest but they were asking that he cooperate. At the time, Davis and Harkey were in plain clothes. No weapons were displayed and Casey was never

physically touched. Casey agreed to accompany Davis to the basement office.

During this 8-10 minute interval, Officer Harkey was conducting an interview with Sport. Harkey testified during *voir dire* that Sport said, "You can search my bags" and that Harkey then asked, "Can we search your yellow bag and your briefcase." Sport responded, "Yes, you may search those if you want to." Whereupon Sport took off in a taxi, leaving his driver's license in Harkey's hand. Sport has not been heard from since.

Officer Harkey returned to the basement area. The defendant was advised by the officers that Sport had consented to a search of his luggage and of the briefcase and bag. Agent Davis then advised Casey that he could refuse to permit a search. Defendant allowed the search. Both officers testified that Casey kept the bags in his possession throughout the 8-10 minute encounter and never set them down until requested to do so by Davis. When the bags were opened, Agent Davis discovered contraband in the yellow plastic bag. The briefcase contained personal papers and items belonging to Sport. Defendant's name appeared once in an address book contained in the briefcase. Defendant was immediately arrested after the search. Neither officer claims to have known Mr. Sport or the defendant before the day of arrest.

The defendant presented no evidence during the *voir dire* and failed, during his cross-examination to elicit any conflicting evidence material or relevant to the trial court's findings of fact.

The trial court specifically found that defendant told the officers that the bags were not his, but belonged to Mr. Sport; that defendant was informed that he was not under arrest; that he assented to a request to go to the private office; that he was advised that he could refuse to permit a search of the briefcase and bag, and that he agreed to the search. In addition, the trial court made a separate finding that defendant was not coerced or threatened in any way, never placed under arrest and that no weapon was ever displayed by either of the officers.

The findings of fact by the trial court are supported by competent evidence and are therefore binding on this court. *State v. Williams, supra; State v. Freeman, supra.*

Based upon its findings of fact, the trial court concluded as a matter of law:

(1) the defendant, having specifically disclaimed owner-ship of the bags, had no reasonable expectation as to the privacy of their contents.

(2) the defendant freely and voluntarily consented to a search of the bags by the officers.

(3) the materials found in the bags by the officers are ad-missible in evidence.

The thrust of defendant's argument is that his consent to the search of the yellow plastic bag and briefcase was tainted by the law enforcement officers' warrantless "seizure" of his person in violation of his Fourth Amendment rights. Defendant equates the private office with a police station and maintains that the request that he accompany the officers was inherently coercive. No authority is cited in support of this proposition other than the ALI Model Code of Pre-arraignment Procedure Sec. 2.01 (3) and Commentary p. 91 (Tent. Draft No. 1, 1966). Defendant contends that he was subjected to an unreasonable seizure in that his detention in the basement office was not supported by probable cause and was neither brief nor based upon reasonable suspicion that he was engaged in narcotics trafficking.

The State maintains that the type of investigatory stop and detention involved in this case requires only that the officer has a reasonable suspicion, based upon objective facts, that the person is engaged in criminal activity. *Brown v. Texas*, 443 U.S. 47, 61 L.Ed. 2d 357, 99 S.Ct. 2637 (1979); *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979).

The State argues that no seizure occurred; but if a seizure is found, that reasonable or founded suspicion existed in this case based on Casey's behavior consistent with the DEA Drug Courier Profile, an "informally compiled abstract of characteristics thought to be typical of persons carrying illicit drugs." In its brief, the State urges that this court approve use of the profile as a basis for investigatory stops.

A

The legality of searches and seizures based upon the "Drug Courier Profile" has been the subject of much judicial discussion since the inception of the Drug Enforcement Administration's (DEA) narcotics surveillance program in the nation's major airports.[1]

This Court analyzed a remarkably similar encounter between Agent Davis, Officer Harkey, and another domestic air passenger in *State v. Grimmett*, 54 N.C. App. 494, 284 S.E. 2d 144 (1981). The officers observed Grimmett and a companion near the baggage pickup area in the Charlotte Airport. They had been seen a few days earlier departing for Daytona Beach, Florida. The officers concluded that Grimmett's behavior pattern in the airport fell within the "drug courier profile." Harkey then approached Grimmett in a public area outside the terminal, identified himself, stated the purpose of his approach, and asked if Grimmett would talk with him. Grimmett first agreed to talk to Harkey, then subsequently agreed to accompany Harkey into the terminal. At no time did Harkey display a weapon or use physical force or contact or threaten Grimmett. On the basis of the following language from *Terry v. Ohio*, this Court found no seizure during the initial encounter:

> "Obviously, not all personal intercourse between policemen and citizens involves 'seizure' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. 392 U.S. at 19, n. 16, 20 L.Ed. 2d at 905, n. 16, 88 S.Ct. at 1879, n. 16."

*Id.* at 501, 284 S.E. 2d at 149, *citing Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968).

Casey's initial encounter with Harkey and Davis was virtually identical and cannot be considered a "seizure." Casey's main

1. For example, *see Reid v. Georgia*, 448 U.S. 438, 65 L.Ed. 2d 890, 100 S.Ct. 2752 (1980) (per curiam); *State v. Grimmett*, 54 N.C. App. 494, 284 S.E. 2d 144 (1981); *State v. Cooke*, 54 N.C. App. 33, 282 S.E. 2d 800 (1981); *United States v. McCaleb*, 552 F. 2d 717 (6th Cir. 1977); *United States v. Westerbann-Martinez*, 435 F. Supp. 690 (E.D. N.Y. 1977); *United States v. Buenaventura-Ariza*, 615 F. 2d 29 (2nd Cir. 1980); *United States v. Berry*, 670 F. 2d 583 (5th Cir. 1982) (en banc).

contention is that his trip to the basement office was an illegal investigatory detention which tainted his subsequent consent to a search. Grimmett had also argued that his trip to the basement was a seizure tainting the evidence discovered there.

In analyzing the legality of the further intrusion in *Grimmett*, this Court noted that our constitution prohibits investigatory seizures. The following legal principles were found to control:

> "[E]ven though an intrusion upon the personal security of a citizen stops short of a 'technical arrest,' the Fourth Amendment requires that the intrusion be reasonable. *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed. 2d 607, 95 S.Ct. 2574 (1975); *Terry v. Ohio.* The reasonableness requirement for seizures that are less intrusive than traditional arrests are (a) that they be supported by articulable and objective facts, *Brown v. Texas*, 443 U.S. 47, 61 L.Ed. 2d 357, 99 S.Ct. 2637 (1979); and (b) that they be brief, *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979)."

*Id.* at 499, 284 S.E. 2d at 148.

The officers in *Grimmett* were found to lack a reasonable and articulable suspicion that Grimmett was engaged in criminal activity based upon the "drug courier profile" behavior observed by the agents, including the "further, more critical facts" learned during the initial interview.[2]

[1] Casey does not seriously contend that his detention was not brief. Therefore, the first question is whether it was based upon a reasonable and articulable suspicion of criminal activity.

In the case *sub judice*, Officer Harkey's "profile" consisted of the following characteristics: 1) arrival from a "source city"; 2) people that are in a hurry; 3) people that exchange baggage or packages without a lot of conversation, and in general, any suspicious behavior that would draw the agent's attention to individuals.

The officers' observations consisted of the following: two individuals met without speaking to each other on a concourse near

---

2. These facts were Grimmett's extreme nervousness and inability to identify himself.

to where a flight from Atlanta had just landed. As Casey approached Sport, he immediately held a newspaper headline up to Sport's face. Sport then handed Casey a briefcase and yellow bag. They walked to a baggage claim area, had a slight conversation and Casey walked quickly out the terminal door. After the officers identified themselves, Casey became very nervous and shaking as he produced his driver's license. Asked if the bags he carried were his own, Casey responded that they belonged to Sport.

The standard of "reasonable" or "founded" suspicion to justify a limited investigatory seizure requires that the court examine both the articulable facts known to the officers at the time they determined to approach and investigate the activities of Casey and Sport, and the rational inferences which the officers were entitled to draw from those facts. *State v. Thompson, supra.*

*Reid v. Georgia,* 448 U.S. 438, 65 L.Ed. 2d 890, 100 S.Ct. 2752 (1980) (per curiam) is controlling on the narrow issue of the existence of reasonable suspicion on the facts of this case. The petitioner in *Reid* appeared to the agent to fit the so-called "drug courier profile" and appeared nervous during the initial encounter. Specifically the court below had thought it relevant that (1) the petitioner arrived from Fort Lauderdale, a "source city"; (2) he arrived in the early morning when law enforcement activity is diminished; (3) he and his companion appeared to the agent to be trying to conceal the fact they were traveling together; and (4) they apparently had no luggage other than shoulder bags.

The United States Supreme Court concluded that the agent could not, as a matter of law, have reasonably suspected the petitioner of criminal activity on the basis of the observed characteristics.

The Supreme Court dismissed three of the characteristics as describing "a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the court to conclude that as little foundation as there was in this case could justify a seizure." As to the other observation, the Supreme Court stated:

"[O]nly the fact that the petitioner preceded another person and occasionally looked backward at him as they proceeded

through the concourse relates to their particular conduct . . . [t]he agent's belief that the petitioner and his companion were attempting to conceal the fact that they were traveling together, a belief that was more an 'inchoate and unparticularized suspicion or 'hunch',' 392 U.S. at 27, than a fair inference in the light of his experience, is simply too slender a reed to support the seizure in this case."

448 U.S. at 441, 65 L.Ed. at 894, 100 S.Ct. at 2754.

At the time of their initial encounter with Casey, Harkey and Davis had no prior knowledge of either Casey or Sport nor did they know which city Sport was arriving from. What they did know was that Sport and Casey met without greeting one another, apparently making contact by reference to a newspaper headline, exchanged bags without conversing and walked quickly out of the terminal.

Two of the "profile" factors observed may be discounted immediately. The officers *assumed* that Sport arrived from a "source city" because he was observed coming down a concourse from the direction of the Atlanta arrival gate.[3] Agent Davis

3. A review of jurisdictions having ruled on the drug courier profile demonstrates a judicial consensus that the fact that a passenger arrived from or is departing for a city designated as a "narcotics distribution center" or "source city" by DEA Agents is entitled to little or no weight in analyzing the legality of a particular airport stop. *Reid v. Georgia*, 448 U.S. at 441, 65 L.Ed. 2d at 894, 100 S.Ct. at 2754 (arrival from Fort Lauderdale is a circumstance describing a very large category of presumably innocent travelers); *United States v. Scott*, 545 F. 2d 38, 40, n. 2 (8th Cir. 1976), *cert. denied* 429 U.S. 1066, 50 L.Ed. 2d 784, 97 S.Ct. 796 (1977) ("traveling from Los Angeles, [it being known 'that Los Angeles, California is a major distribution area for Mexican heroin,'] (has) little or no probative value"); *United States v. Andrews*, 600 F. 2d 563, 566-567 (6th Cir. 1979) ("Similarily, travel from Los Angeles cannot be regarded as in any way suspicious. Los Angeles may indeed be a major narcotics distribution center, but the probability that any given airplane passenger from that city is a drug courier is infinitesimally small. Such a flimsy factor should not be allowed to justify — or help justify — the stopping of travelers from the nation's third largest city. Moreover, our experience with DEA agent testimony in other cases makes us wonder whether there exists any city in the country which a DEA agent will not characterize as either a major narcotics distribution center or a city through which drug couriers pass on their way to a major narcotics distribution center."); *United States v. Pulvano*, 629 F. 2d 1151, 1155, n. 1 (5th Cir. 1980) ("A review of the cases in which this profile has been used, as well as the direct testimony of DEA Agent Mathewson, convinces us of the tragic fact that every major population center in this country has become a home for drug traffickers. It is difficult, therefore, to give that factor much weight."); *United States v.*

State v. Casey

testified that they *"later* determined he had gotten off Eastern Airlines Flight 386 from Atlanta, originating in New Orleans." (Emphasis added.) The officers also found it significant that Casey walked in a rapid pace through the terminal doors.[4] We do not. Even assuming *arguendo,* the officers were justified in concluding that Sport had arrived from a "source city," this factor together with Casey's pace describes a "very large category of presumably innocent travelers" and does not justify an investigative seizure. No inference of involvement in narcotics trafficking may reasonably be drawn from those factors.

Officer Harkey stated that one profile characteristic he was trained to look for was "people that exchange baggage or packages without a lot of conversation."[5] This also falls under the category of characteristics wholly consistent with innocent behavior.

*Buenaventura-Ariza, supra* at 36 (arrival from Miami, a "source city," and apparent nervousness wholly insufficient to constitute "specific and articulable" facts supporting a reasonable suspicion of involvement in drug trafficking). *But see United States v. Post,* 607 F. 2d 847 (9th Cir. 1979); *United States v. Sullivan,* 625 F. 2d 9 (4th Cir. 1980), *cert. denied* 450 U.S. 923, 67 L.Ed. 2d 352, 101 S.Ct. 1374 (1981).

4. A number of drug courier profile stops have been based upon the manner in which a passenger walked through the airport terminal. In some cases, the fact that the passenger walked quickly was considered significant by the agents. *United States v. Rogers,* 436 F. Supp. 1 (E.D. Mich. 1976); *United States v. Jefferson,* 650 F. 2d 854 (6th Cir. 1981) (DEA Agent Markonni thought defendant walked faster than "normal"); *United States v. Garcia,* 450 F. Supp. 1020 (E.D. N.Y. 1978); *United States v. Williams,* 647 F. 2d 588 (5th Cir. 1981) (per curiam). In other cases, the fact that the passenger walked slowly was considered equally significant by the agents involved. *United States v. Mendenhall,* 446 U.S. 544, 564, 64 L.Ed. 2d 497, 516, 100 S.Ct. 1870, 1882 (1979) (*Powell, J.,* concurring) ("Once inside the terminal, respondent scanned the entire gate area and walked 'very, very slowly' toward the baggage area. Id., at 10 [testimony of Agent Anderson]"); *United States v. Bowles,* 625 F. 2d 526 (5th Cir. 1980); *United States v. Robinson,* 625 F. 2d 1211 (5th Cir. 1980).

5. The third characteristic listed by Officer Harkey is not contained in other reported drug courier profile cases. For a list of four complete and slightly varying profiles, *see United States v. Berry, supra,* 670 F. 2d at 598-599, n. 17. A number of courts have noted the lack of congruity between "profiles." *United States v. Elmore,* 595 F. 2d 1036, 1039 (5th Cir. 1979), *cert. denied* 447 U.S. 910, 64 L.Ed. 2d 861, 100 S.Ct. 2998 (1980). *United States v. Berry, supra; United States v. Rico,* 594 F. 2d 320, 326 (2nd Cir. 1979). Other courts having reviewed a number of drug courier profile stops have remarked upon the chameleon nature of the factors constituting the profile. *United States v. Chamblis,* 425 F. Supp. 1330, 1333 (E.D. Mich. 1977) ("One problem with determining the propriety of the stop solely on the basis

Of the particularized conduct observed by the officers, great weight was placed upon the fact that Casey, without verbally greeting Sport, held up a newspaper headline for him to read. The record indicates that the headline referred to some fugitives from Georgia who were captured in North Carolina.

While this conduct may be unusual, the belief that it was indicative of criminal activity afoot was more a "hunch" than a fair inference, and no more substantial a reed to support a seizure than that rejected by the Supreme Court in *Reid v. Georgia.*

The State suggests that this Court approve use of the "profile" as a basis for investigatory stops, asserting that the United States Supreme Court has already done so in *United States v. Mendenhall, supra.* However, in *Mendenhall,* the Supreme Court did not specifically approve use of the profile in the determination of the reasonableness of a seizure. *See State v. Grimmett,* 54 N.C. App. at 497, n. 3, 284 S.E. 2d at 147, n. 3 for discussion of the precedential value of *Mendenhall.* The most direct analysis of the use of the drug courier profile in airport stops by the United States Supreme Court was made in *Reid v. Georgia,* where the agents were held to lack a reasonable and articulate suspicion of criminal activity based on the observation of four profile characteristics. Yet, even in *Reid v. Georgia,* the proper use of the drug courier profile by a court in determining the existence of reasonable suspicion was not directly addressed.

The Fifth Circuit Court of Appeals after an exhaustive and scholarly review of the many Drug Courier Profile cases in that jurisdiction recently concluded that:

"[T]he profile is nothing more than an administrative tool of the police. The presence or absence of a particular characteristic on any particular profile is of *no* legal significance in the determination of reasonable suspicion.

---

of whether or not the defendant met the profile is that the factors present in the profile seem to vary from case to case. Special Agent Wankel himself testified that the profile in a particular case consists of anything that arouses his suspicions."); *United States v. Westerbann-Martinez, supra,* at 698 ("Giving the government the benefit of the doubt, this Court must conclude that either the "Drug Courier Profile" is too amorphous and unreliable to be of any help, or that there is a tremendous lack of communication within the Drug Enforcement Administration as to the factors in the profile.").

State v. Casey

*    *    *

A profile does not focus on the particular circumstances at issue. Nor does such a profile indicate in every case that a specific individual who happens to match some of the profile's vague characteristics is involved in actions sufficiently suspicious to justify a stop.

*    *    *

If an officer can demonstrate why some factor, interpreted with due regard for the officer's experience and not merely in light of its presence on the profile, was, in the particular circumstance of the facts at issue, of such import as to support a reasonable suspicion that an individual was involved in drug smuggling, we do not believe that a court should downgrade the importance of that factor merely because it happens to be a part of the profile. Our holding is only that we will assign no characteristic greater or lesser weight merely because the characteristic happens to be present on, or absent from, the profile."

[Emphasis original] *United States v. Berry,* 670 F. 2d 583, 600-601 (5th Cir. 1982) (en banc). In the case *sub judice,* the fact that certain characteristics were claimed to be part of a drug courier profile in no way enhances the "quantum of individualized suspicion" usually a prerequisite to a constitutional search and seizure. *United States v. Martinez-Fuerte,* 428 U.S. 543, 560, 49 L.Ed. 2d 1116, 1130, 96 S.Ct. 3074, 3084 (1976). And, as stated above, what particularized conduct was observed by the officers was "too slender a reed" to support a seizure under *Reid v. Georgia.* The agents could not have reasonably suspected the defendant of criminal activity based on the observed circumstances.

B

The next question to be addressed is whether the further detention—the trip to the basement office—was justifiable. The officers learned little during the initial interview to warrant extending their intrusion upon Casey's privacy. Therefore, the existence of a seizure turns upon the voluntariness of Casey's consent to go to the office.

Again, the facts of this case are remarkably similar to those in both *State v. Grimmett* and *United States v. Mendenhall.* Defendant Mendenhall's alleged behavior pattern fit the "drug courier profile." DEA agents in the Detroit Airport stopped and asked her if she would talk with them. She agreed and was then taken to a DEA office and questioned. Later she consented to a search. In *Mendenhall,* "[t]he District Court specifically found that the respondent accompanied the agents to the office 'voluntarily in a spirit of apparent cooperation.'" 446 U.S. at 557, 64 L.Ed. 2d at 511, 100 S.Ct. at 1879, *quoting Sibron v. New York,* 392 U.S. 40, 63, 20 L.Ed. 2d 917, 935, 88 S.Ct. 1889, 1903 (1968). A fragmented United States Supreme Court adopted this finding as binding on review and held that the trip to the DEA Office under these circumstances was not a violation of Ms. Mendenhall's Fourth Amendment rights.

So too, in *State v. Grimmett,* the trial court's findings that the officer made a series of requests, to each of which the defendant assented, were held to be competent evidence supporting the conclusion that Grimmett consented to accompany Officer Harkey to the basement. This court rejected Grimmett's argument that the trip constituted a seizure.

The same can be said for the case *sub judice.* The trial court specifically found that Casey assented to a series of requests by Agent Davis and Officer Harkey, was not coerced, threatened or arrested and agreed to accompany the officers to the basement. Casey was specifically informed that he was not under arrest. The trial court's finding that Casey voluntarily consented to go to the office is supported by competent evidence and is binding on review. Casey's argument that he was seized when taken to Harkey and Davis' private basement office must be rejected. Therefore, the evidence obtained during the subsequent search was not tainted by an unlawful seizure, despite the lack of reasonable suspicion on the part of the officers where Casey consented to accompany them to the basement.

C

[2]  Casey's next two arguments are addressed to the legality of the search and seizure of the bags themselves.

Upon *voir dire* the trial court found that Casey replied, "No" when asked if the bags were his, and stated that they belonged to

Sport. Based upon this finding, the court concluded as a matter of law that Casey, having specifically disclaimed ownership of the bags, had no reasonable expectation as to the privacy of their contents.

Casey correctly argues that his denial of ownership was not a voluntary abandonment or disclaimer of ownership extinguishing his reasonable expectation of privacy in the area searched.

The test for determining whether a person has been aggrieved by a search and seizure through the introduction of damaging evidence secured by the search was set forth by the Supreme Court of the United States in *Rakas v. Illinois*, 439 U.S. 128, 143, 58 L.Ed. 2d 387, 401, 99 S.Ct. 421, 430 (1978), *reh. denied* 439 U.S. 1122, 59 L.Ed. 2d 83, 99 S.Ct. 1035 (1979). Stated broadly, the test is whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. Stated narrowly, standing to claim the protection of the Fourth Amendment is based upon the "legitimate expectation of privacy" of the individual asserting that right in the invaded place. *Rakas v. Illinois, supra, citing Katz v. United States*, 389 U.S. 347, 19 L.Ed. 2d 576, 88 S.Ct. 507 (1967). In *Rakas*, the Supreme Court shifted the focus of its inquiry away from a technical definition of "standing" and placed it on an expectation of privacy in the location searched which the law recognizes as legitimate. *Accord State v. Melvin*, 53 N.C. App. 421, 281 S.E. 2d 97 (1981); *State v. Jones*, 299 N.C. 298, 261 S.E. 2d 860 (1980); *State v. Alford*, 298 N.C. 465, 259 S.E. 2d 242 (1979).

The Supreme Court went on to discuss "legitimate" expectations of privacy as follows:

> "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who *owns or lawfully possesses or controls property* will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. [Emphasis added]

*Rakas v. Illinois*, 439 U.S. at 143-144, n. 12, 58 L.Ed. 2d at 401, n. 12, 99 S.Ct. at 430-431, n. 12.

The State argues that the defendant did not assert any ownership or possessory interest in the items searched, but rather denied ownership. The State cites *State v. Melvin* for the proposition that a simple showing that defendant was physically holding the bags from which the law enforcement officers seized the incriminating evidence is not a sufficient demonstration that he possessed any legitimate expectation of privacy in them.

*State v. Melvin* is distinguishable on its facts from the case *sub judice.* In *Melvin*, the defendant was not in possession of the items seized during the search. The defendant was neither the owner nor the driver of the car searched, but merely a passenger and he claimed no property rights in the items seized. By contrast, Casey was in actual physical possession of the yellow plastic bag for the entire duration of the encounter with Harkey and Davis. The officers testified that Casey never set the bags down or made any effort to let go of them until requested to do so by the officers themselves. Nor was Casey in wrongful possession of the bags and therefore unable to claim standing to object to the search. *See State v. Greenwood,* 301 N.C. 705, 273 S.E. 2d 438 (1981); *State v. Crews,* 296 N.C. 607, 252 S.E. 2d 745 (1979). During the encounter Casey had the right to exclude all others from the bags by virtue of his right of possession and control. This right in turn gave rise to a legitimate expectation of privacy in the contents of the bags. That expectation was not lost by virtue of Casey's informing the officers, at their request, that the owner of the bags was Mr. Sport. *See State v. Cooke, supra.* Therefore, the defendant had a Fourth Amendment interest of privacy in the area searched and the next question we must determine is whether he voluntarily consented to the search of that area.[6]

In addition to its finding that Casey consented to accompany Davis to the basement office, the trial court found that Casey consented to the search of the briefcase and bag containing contraband. The following facts specifically found by the trial court are supported by competent evidence:

6. Indeed, the State's argument addressed to the sufficiency of the evidence against Casey at trial to support the conviction for possession of LSD with intent to sell or deliver is premised on the sufficiency of Casey's "possessory" interest—his power and intent to control—the contents of the bags.

In an office in the airport the defendant was advised by the officers that Sport had consented to a search of his luggage and of the briefcase and bag. He agreed that the officers could search the bags. They were searched, and alleged contraband was found in the plastic bag.

Although there was some conflict, the evidence presented by the State also tends to show that Casey was advised that he could refuse to consent to a search by Agent Davis. The trial court made findings that the defendant was not coerced or threatened in any way. Upon *voir dire* to determine the voluntariness of Casey's consent to a search of his property, the weight to be given the evidence is peculiarly a determination for the trial court, and the findings are conclusive when supported by competent evidence. *State v. Grimmett, supra; State v. Little,* 270 N.C. 234, 154 S.E. 2d 61 (1967). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973).

Although Casey correctly assigned error to the trial court's conclusion of law that he had no reasonable expectation of privacy in the bags, we find no violation of his Fourth Amendment rights. As stated above, there was no illegal seizure to taint the subsequently discovered evidence and the defendant voluntarily consented to the search of the briefcase and plastic bag. Therefore, Casey's motion to suppress was properly denied and his assignment of error as to consent is without merit.

[3] Defendant next assigns error to the trial court's denial of his motion to dismiss at the close of the State's evidence. Casey argues that his motion to dismiss should have been granted because the State failed to present sufficient evidence that he knew the bags he carried contained a controlled substance and because the State failed to present sufficient evidence that he intended to sell or deliver a controlled substance. We disagree.

The North Carolina Supreme Court recently summarized the test by which sufficiency of the State's evidence is to be judged upon a criminal defendant's motion to dismiss.

"The test of the sufficiency of the evidence in a criminal action is the same whether the motion raising that issue is one for dismissal, directed verdict or judgment of nonsuit. *See,* e.g., *State v. Powell,* 299 N.C. 95, 98, 261 S.E. 2d 114, 117

(1980); *State v. Hunt,* 289 N.C. 403, 407, 222 S.E. 2d 234, *death sentence vacated,* 429 U.S. 809 (1976). That test has been articulated by the United States Supreme Court as whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). (Emphasis original.) This Court has held that its traditional formulation of the test is the same in substance as that given in *Jackson. State v. Jones,* 303 N.C. 500, 504-505, 279 S.E. 2d 835, 838 (1981). Although our cases may have occasionally employed different language in substance our test is that 'there must be substantial evidence of all material elements of the offense' in order to create a jury question on defendant's guilt or innocence. *Id.* In ruling on this question, '[t]he evidence is to be considered in light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.' *State v. Powell, supra,* 299 N.C. at 99, 261 S.E. 2d at 117."

*State v. Locklear,* 304 N.C. 534, 537-538, 284 S.E. 2d 500, 502 (1981).

The offense with which Casey is charged has three elements. One, there must be possession of a substance. *State v. Aiken,* 286 N.C. 202, 209 S.E. 2d 763 (1974). Two, the substance must be a controlled substance. Three, there must be intent to distribute or sell the controlled substance. G.S. 90-95(a).

In *State v. Davis,* 20 N.C. App. 191, 192, 201 S.E. 2d 61, 62 (1974), *cert. denied* 284 N.C. 618, 202 S.E. 2d 274 (1974), this Court held:

"In the leading case of *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972), the Supreme Court held that an accused had possession of a controlled substance within the meaning of the law 'when he has both the power and intent to control its disposition or use.' *Id.* at 12, 187 S.E. 2d at 714. The re-

quirements of power and intent necessarily imply that a defendant must be aware of the presence of an illegal drug if he is to be convicted of possessing it."

The uncontradicted evidence before the jury was that the defendant had at least actual physical possession of and dominion over the plastic bag in which the controlled substance was found. Both law enforcement officers testified that Mr. Sport either "pushed" or "handed" the bags to Casey and that Casey continued to hold onto the bags throughout the encounter with the officers. This evidence is more than sufficient to infer the defendant's power and intent to control the disposition or use of the bags and their contents.

The State must also present some evidence that Casey was aware of the presence of the controlled substance. *State v. Davis, supra*. However, the defendant's knowledge can be inferred from the circumstances.

"Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of *knowledge and possession* which may be sufficient to carry the case to the jury on a charge of unlawful possession." (Emphasis added.)

*State v. Harvey, supra*, 281 N.C. at 12, 187 S.E. 2d at 714.

Defendant strenuously contends that at most, he was mere bailee of containers belonging to Mr. Sport. However, upon motion for judgment as of nonsuit, evidence must be considered in the light most favorable to the State and every reasonable inference arising therefrom must be given to the State. Contradictions and discrepancies do not warrant dismissal. *State v. Locklear, supra*. Therefore, the fact that the controlled substance was found within a bag under the control of the defendant, together with his unusual actions within the airport and his nervousness when questioned by the law enforcement officers as to whether there was contraband in the bag, when viewed in the light most favorable to the State, raises an inference of knowledge of the controlled substance's presence sufficient to carry the case to the jury.[7]

---

7. We do not hereby endorse the use of the "drug courier profile" to establish reasonable suspicion justifying an investigatory seizure; but merely note that the

Casey also argues that there was insufficient evidence that he intended to sell or distribute the controlled substance.

Although the State has the burden of proving that the defendant intended to sell or deliver the controlled substance, it may rely upon ordinary circumstantial evidence such as the amount of the controlled substance possessed and the nature of its packaging and labeling to carry the burden. *State v. Roseboro,* 55 N.C. App. 205, 284 S.E. 2d 725 (1981), *disc. rev. denied,* 305 N.C. 155, 289 S.E. 2d 566 (1982); *State v. Cloninger,* 37 N.C. App. 22, 245 S.E. 2d 192 (1978); *State v. Mitchell,* 27 N.C. App. 313, 219 S.E. 2d 295 (1975), *disc. rev. denied,* 289 N.C. 301, 222 S.E. 2d 701 (1976).

In this case, there was evidence that Casey possessed in excess of 25,000 individually wrapped dosage units of LSD which appeared to be commercially packaged.

This evidence was sufficient to infer the defendant's intent to sell or distribute the controlled substance and to overcome his motion to dismiss.

This assignment of error is without merit.

Affirmed.

Judges VAUGHN and HILL concur.

Judge VAUGHN concurring.

I agree that there was ample evidence to support the court's findings of fact which, in turn, support his conclusion that defendant "freely and voluntarily consented to a search of the bags by the officer." The motion to suppress was, consequently, properly denied. I further agree that the evidence was sufficient to take the case to the jury. Our decisions on these two questions are dispositive of the appeal, and it is there that I would stop. If it were necessary to reach other matters discussed by the majority, I am not sure I would reach the same conclusions.

---

characteristics observed by the officers in this case may be considered on the issue of defendant's awareness of the presence of contraband in the bags.