The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Roger Russell BAIRD, Defendant-Appellant.

No. 79CA0321.

Colorado Court of Appeals, Div. III.

March 19, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Lynne Ford, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Robert A. Millman, Colorado Springs, for defendant-appellant.

KIRSHBAUM, Judge.

Claiming that the trial court erroneously denied his motion to suppress, defendant, R. Russell Baird, appeals his conviction of possession of dangerous drugs with intent to dispense. We reverse.

The record discloses that on April 26, 1978, defendant and Anthony Wayne DeWitt entered a Miami airport together and purchased tickets to Colorado Springs in cash. Each checked two new suitcases with combination locks to Colorado Springs. Although they had no prior information about either defendant or DeWitt, Florida narcotics detectives who saw them enter the airport and observed their ticket purchases concluded that each matched a "profile" purportedly describing characteristics of persons suspected of transporting illegal drugs.[1]

On the basis of this conclusion, the Florida detectives examined the name tags on the luggage and questioned each man separately. They concluded that defendant had purchased his ticket and was traveling under the name of R. Russell, although he produced an expired driver's license which identified him as R. Russell Baird. DeWitt, who was observed to have watery eyes and a runny nose, was also discovered to be traveling under a false name. The men denied knowing each other. Two Florida detectives subsequently telephoned this information to Colorado Springs detective Ronald Butler, described defendant and DeWitt, and indicated their belief that the

---

1. Despite the trial court's request therefor, the prosecution produced no evidence of the actual content of such profile. At least one court has determined that reliance on a "drug courier profile" may not provide police officials with probable cause to arrest an individual. *United States v. McCaleb*, 552 F.2d 717 (6th Cir. 1977).

two men did know each other. The Florida detectives also informed Butler of the scheduled arrival time of the particular flight, which was routed to Colorado Springs through Dallas, Texas.

Upon receiving this information, detective Butler organized a surveillance of the Colorado Springs airport. He also attempted unsuccessfully to have dogs trained to detect drugs sent to the airport before the two suspects arrived.

Defendant and DeWitt exited the plane separately and did not contact each other inside the airport. DeWitt immediately left the airport, went to the airport parking lot, and drove a pickup truck to the baggage claim area. He then left the truck, re-entered the airport, and retrieved his luggage.

Meanwhile, defendant went to the restroom, walked to the baggage claim area, walked back up the concourse, and sat down. Several police officers testified at the suppression hearing that both suspects appeared nervous and seemed to be looking around to check whether they were being followed. Defendant then picked up his two suitcases, left the airport, and approached a taxicab.

As defendant handed one of the suitcases to the taxicab driver, Sergeant Shull of the Colorado Springs Police Department approached, pulled a gun, identified himself, informed him that he suspected defendant of transporting contraband to Colorado Springs, and advised him that the officers needed to talk to him. At that time Shull took the suitcase back from the cab driver and conducted a pat-down search for weapons. When other detectives approached with DeWitt, Sergeant Shull put his gun away. Sergeant Shull testified that defendant was then "taken back along with his luggage into the airport to the security office." Sergeant Shull also testified that in his opinion defendant was free to walk away after the initial stop.

Both suspects were taken to a small security room in the airport, where defendant was interviewed first while DeWitt was detained outside the room. The detectives advised defendant of his *Miranda* rights, but did not tell him he was under arrest. They asked defendant to open the suitcases to permit a search of their contents. Defendant then stated that he could not consent to such search because the suitcases did not belong to him. Defendant admitted that DeWitt had accompanied him but, when questioned further, stated that he wished to speak with an attorney. The questioning then ceased. DeWitt was similarly advised and questioned. He also refused consent to search his suitcases, but did not disclaim ownership thereof.

Defendant and DeWitt were taken to the Colorado Springs Police Department. Their luggage was placed in a lineup with five other suitcases and was singled out by trained dogs as containing drugs. This information was incorporated into an affidavit in support of a search warrant which was subsequently issued. The suitcases contained large quantities of marijuana.

Both defendants filed a motion to suppress the marijuana. Finding the initial stop to be justified under *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971), the trial court concluded that the Colorado Springs police were entitled to detain defendant and his luggage temporarily and that when he disclaimed ownership of the suitcases, they had probable cause to suspect him of theft. The trial court concluded that no probable cause existed to justify detention of DeWitt or of his luggage and suppressed the evidence found in DeWitt's luggage.

Defendant argues that his detention outside the airport constituted an arrest without probable cause and that the seizure and search of his luggage was tainted by the illegal arrest. We agree.

██ Not every encounter between a police officer and a citizen constitutes such an invasion of personal rights as to constitute an "arrest" within the meaning of the Fourth Amendment which must be justified by probable cause. Police officers may detain temporarily and question individuals whom they reasonably suspect of engaging in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);

*Stone v. People, supra.* The test for distinguishing such an investigatory stop from a seizure which must be supported by probable cause is whether, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *see United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ Here, defendant was stopped outside the airport by an officer with his gun drawn, was frisked for weapons, and was told that he was to be questioned about transporting contraband. His luggage was taken, and he was then taken into the airport by several officers. Officer Shull's subjective opinion that he considered defendant free to leave is not controlling. *See United States v. Mendenhall, supra* (footnote 6). Under all the circumstances, we conclude that defendant was not free to leave and that his detention outside the airport constituted an arrest for Fourth Amendment purposes. We also conclude, as the trial court ruled and as the People have conceded, that the officers did not have probable cause to arrest defendant at that time. *See Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). *See United States v. Hill,* 626 F.2d 429 (5th Cir. 1980); *see also People v. Tooker,* 198 Colo. 496, 601 P.2d 1388 (1979).

■ The People argue, however, that defendant's subsequent statement that the luggage was not his did establish probable cause to suspect defendant of theft and, hence, to authorize the seizure of his suitcases. However, the luggage was seized prior to such statement, at a time when the officers did not have probable cause for such seizure. Nor does the evidence support the People's argument that defendant had abandoned the luggage; when it was seized, he was actively exercising control over it by putting it into a taxicab. *See People v. Severson,* 39 Colo.App. 95, 561 P.2d 373 (1977). We conclude that the People's arguments lack merit.

The judgment is reversed and the cause is remanded for a new trial with instructions that when defendant is re-tried, the evidence seized from his luggage as a consequence of his unlawful arrest must be suppressed.

KELLY and STERNBERG, JJ., concur.