Shawn L. MILLER, Appellant
(Defendant),

v.

STATE of Indiana, Appellee (Plaintiff).

No. 49A02–8601–CR–36.

Court of Appeals of Indiana,
Second District.

Oct. 6, 1986.

David R. Hennessy, Indianapolis, for appellant (defendant).

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff).

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-appellant Shawn L. Miller (Shawn) appeals his conviction of possession of a sawed-off shotgun, a class D felony,[1] claiming that the trial court erred in admitting the shotgun into evidence because it was the fruit of an illegal search and that the evidence was insufficient to support the judgment of conviction.

We affirm.

### FACTS

The facts most favorable to the trial court's judgment reveal that on Friday, March 29, 1985, at approximately 8:00 a.m., Robert Berry (Berry), a counselor-dean at Howe High School in Indianapolis, received a radio report of a disturbance inside the school building. Berry was patrolling the school's upper parking lot area, looking for outsiders. From previous experience, Berry expected more problems than usual on this last school day before spring vacation. Berry learned few details about the disturbance from the radio report, except that some students were out of control and that one of the deans had gone to the area to investigate. Berry was in the upper parking lot area when David Sparks (Sparks), another counselor-dean at Howe, approached Berry and told him two people had just walked around the building and across the parking lot. The two school counselors drove outside the fence surrounding the parking lot and spotted Shawn with Robert Woods (Robert). The youths were on school property but were walking away from the school. Shawn and Robert turned and saw Berry, then turned away and walked up an embankment. Shawn was carrying a red and white gym

---

1. Ind. Code 35–47–5–4.

bag on his shoulder. Berry called out and gestured for them to stop.

Indianapolis Police Sergeant George Battles (Sgt. Battles) was driving west on Washington Street near the school when he saw Berry, radio in hand, pursuing the two youths and gesturing to them. Sgt. Battles did not recognize Berry but thought he was a law enforcement officer because of the radio he carried. Sgt. Battles pulled over, stopped the youths, and identified himself as a police officer. Berry caught up with the trio and asked Shawn why he was at the school. Berry knew that Shawn had been expelled recently for locker theft and wanted to know why he had returned. Shawn replied that there was to be a riot at Howe that day and that he was there to protect his sister, who had just had a baby. Berry told Sgt. Battles of the disturbance, which he characterized as a fight, at the school. Sgt. Battles asked Berry if these two youths were involved in the disturbance. Berry replied that they were seen on school property and had no business there. Sgt. Battles asked Berry if there were weapons involved in the disturbance. Berry replied that he did not know.

Sgt. Battles flagged down Indianapolis Police Officer William Garner (Officer Garner) as he drove by in a marked patrol car. Sgt. Battles met Officer Garner a short distance from the others and told him that the two school employees had chased Shawn and Robert from the school, that the youths had been involved in a disturbance at the school, and that it was possible weapons were involved in the disturbance. The officers then approached the group. Berry and Sparks told Officer Garner that they were from the school, but gave him no more information. Officer Garner did not question the school counselors. At that moment, Shawn removed the red and white bag from his shoulder, walked about six feet to where Robert was standing, and then set the bag down at Robert's feet. Officer Garner asked Shawn if the gym bag belonged to him. Shawn replied that it did not, that it belonged to Robert. Officer Garner lifted the bag and judged it to be unusually

heavy for a gym bag. Without asking the youths if he could open the bag, he unzipped it, looked inside, and saw clothes. Officer Garner testified later that he was not detaining the youths at the moment he opened the bag, but that he would have stopped them if they had attempted to leave. Thinking that the clothes did not account for the weight of the bag, Officer Garner separated the clothes and found a Little Debbie snack cakes box. Officer Garner considered the contents too heavy to be snack cakes or cookies and removed the lid to discover a broken down sawed-off shotgun.

Shawn was arrested and charged with possession of a sawed-off shotgun. At Shawn's bench trial, defense counsel moved to suppress the shotgun as the fruit of an illegal search. After conducting a hearing on the motion to suppress, the trial court denied the motion and admitted the shotgun into evidence. Shawn was convicted of possession of a sawed-off shotgun. This appeal ensued.

## ISSUES

Shawn raises two issues, as consolidated and restated, for our consideration:

1. Did the trial court err in admitting the shotgun into evidence?
2. Was the evidence sufficient to support the conviction?

## DECISION

ISSUE ONE—Did the trial court err in admitting the shotgun into evidence?

PARTIES' CONTENTIONS—Shawn contends that the trial court erred in admitting the shotgun into evidence because it was the fruit of an illegal search.

The State responds that the shotgun was properly admitted since Shawn abandoned the gym bag and the contents therein. CONCLUSION—The trial court did not err in admitting the shotgun into evidence.

Abandoned property is subject to lawful seizure by police. *Gipson v. State* (1984), Ind., 459 N.E.2d 366. Whether Shawn

abandoned the property prior to the search and thus deprived himself of Fourth Amendment protection rests on a determination of whether he voluntarily relinquished possession or control of the bag under circumstances that indicated he retained no justified expectation of privacy in it. *See generally* 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.6(b) (1978); 1 C.J.S. *Abandonment* § 3 (1985); 40 A.L.R. 4th 381 §§ 21–25 and cases cited therein. "In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein." LaFave, *supra*, at 368. *See also United States v. Colbert* (5th Cir.1973), 474 F.2d 174.

■ A number of courts have found abandonment from disclaimer of ownership in response to police questioning. *See* LaFave, *supra*, at 371 n. 51 and cases cited therein. The question is closer when a denial of ownership is combined with a claim that the object to be searched belongs to another. *See, e.g., United States v. Richards* (5th Cir.1981), 638 F.2d 765, *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638; *State v. Walker* (1978), 119 Ariz. 121, 579 P.2d 1091; *State v. Casey* (1982), 59 N.C.App. 99, 296 S.E.2d 473; *People v. Grainger* (1982), 117 Mich.App. 740, 324 N.W.2d 762. The courts have considered several factors, including whether the defendant willingly relinquished possession of the object, whether the defendant asserted a lawful possessory claim to it, and whether the defendant attempted to conceal the object or its contents from police view. The test to be applied is an objective one, considering the words used, the conduct exhibited, and other objective facts such as where and for what length of time the property is relinquished and the condition of the property. *See O'Shaughnessy v. State* (1982), Fla. Dist.Ct.App., 420 So.2d 377.

■ The facts support a finding that Shawn voluntarily relinquished possession and control of the bag under circumstances that indicate he retained no justified expec-

tation of privacy in it. He relinquished possession of the bag without having been asked or forced to do so, he asserted no lawful possessory claim to it, and he made no attempt to conceal the bag or its contents from police view. By walking a distance of six feet to place the bag at his companion's feet, and by stating, in response to Officer Garner's inquiry, that the bag was not his but that it belonged to his companion, Shawn purposefully disassociated himself from the bag and its contents. Thus, the evidence supports a finding of abandonment.

Moreover, the facts support a finding that the abandonment of the bag was voluntary. Abandoned property is not admissible into evidence if the abandonment was precipitated by illegal police conduct or the threat thereof. *See Gipson, supra; State v. Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874; *Bowles v. State* (1971), 256 Ind. 27, 267 N.E.2d 56. Shawn concedes that the initial stop was justifiable but contends that the officer exceeded the permissible scope of the investigation, and that the imminent threat of Officer Garner's illegal seizure and search of the bag precipitated the abandonment. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229. *See also Baker v. State* (1985), Ind., 485 N.E.2d 122.

■ The officer's conduct did not exceed the permissible scope of the investigatory stop. In the short time prior to the search, Sgt. Battles heard about a disturbance at school from both Shawn and Berry. He questioned Berry about the youths' involvement in the disturbance and about weapons. He flagged down Officer Garner and told him what he had observed and what he suspected. In short, he "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly,

during which time it was necessary to detain the suspects." *Baker, supra,* at 125.

 Moreover, it is only when the illegal police activity or the threat thereof actually leads to the relinquishment of possession that the evidence must be suppressed. *See Bowles, supra.* Here the bag was voluntarily abandoned before any search was threatened. At the moment Shawn placed the bag at Robert's feet, the two officers had just walked over to rejoin the group. Shawn's abandonment was not precipitated by any illegal police conduct or threat thereof. Thus, the trial court properly admitted the bag into evidence.

ISSUE TWO—Was the evidence sufficient to support the conviction?

PARTIES' CONTENTIONS—Shawn argues the evidence was insufficient to support his conviction of possession of a sawed-off shotgun.

The State responds that the evidence was sufficient.

CONCLUSION—The evidence is sufficient to support the conviction.

Our standard of review is well established. *See Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20. This court has interpreted IC 35–47–5–4 to require proof of knowing control or custody of a sawed-off shotgun. *Doss v. State* (1984), Ind. App., 470 N.E.2d 732. Viewed most favorably to the trial court's judgment, the evidence indicates that Shawn was in exclusive possession of the bag prior to the stop. In response to Berry's question, he explained that he was at the school to protect his sister because there was to be a riot that day. When the two police officers approached, he purposefully disassociated himself from the bag, both by his words and by his actions. From these facts, a reasonable inference arises that Shawn knew the bag contained an illegal weapon. Therefore, the evidence is sufficient to support the finding that he had knowing control or custody of the shotgun.

The judgment of conviction is affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.