STATE of Indiana, Appellant
(Plaintiff Below),

v.

Bachir MACHLAH, Massoud
Kharrazian, Appellees
(Defendants Below).

No. 49A04–8612–CR–363.

Court of Appeals of Indiana,
Fourth District.

April 9, 1987.
Rehearing Denied May 22, 1987.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

Belle T. Choate, Indianapolis, for appellees.

MILLER, Judge.

The State appeals the trial court's suppression of marijuana found in a suitcase in the trunk of a taxicab in which defendant-appellants Bachir Machlah and Massoud Kharrazian were passengers. The State argues the trial court erred in suppressing this evidence, relating to charges of dealing in marijuana, a class C felony, because neither defendant has a legitimate expectation of privacy in the suitcase and therefore cannot challenge its warrantless search and seizure.

We affirm the court's ruling with respect to defendant Machlah who was in exclusive actual possession of the suitcase and placed it in the taxicab trunk. We reverse the court's ruling as to defendant Kharrazian because no evidence was produced at the hearing to connect him with the suitcase, so he had no reasonable expectation of privacy in it.

### FACTS

As presented at the suppression hearing, the evidence most favorable to the decision of the trial court reveals that on March 31, 1986, Indianapolis Police Officer Ronald Schmidt and Indiana State Police Detective Daniel Moore were assigned to a multi-agency airport drug detail at the Indianapolis International Airport. Bachir Machlah had been under suspicion of transporting illegal drugs from Florida to Indianapolis for eight months because of his frequent short-duration flights from Florida.

At 11:55 a.m. Schmidt and Moore observed Bachir Machlah and Massoud Kharrazian arrive separately on the same flight from Orlando, Florida. The officers watched Machlah go to the baggage claim area, then bolt through the airport, returning to remove a suitcase from the baggage claim belt, check its ticket, and leave the terminal for a taxicab. Machlah placed the suitcase in the trunk of the taxicab, then put his briefcase and topcoat in the backseat of the cab. Machlah reentered the terminal, approached Kharrazian and the two men left the terminal together and entered the waiting cab.

Officer Moore took an unmarked car stationed outside and followed the cab from the airport. When traffic became heavy, Moore called for assistance. He maintained surveillance until the cab reached the 4400 block of North Keystone Avenue where, with the assistance of two unmarked Indiana State Police units, the taxicab was stopped. Five officers, none in uniform, were at the scene.

Officers' Schmidt and Moore approached the cab, identified themselves as police, asked for identification from Machlah and Kharrazian and ordered the two men out of the cab. Schmidt spoke with Kharrazian regarding his purpose in visiting Indianapolis. Moore asked to search Machlah's briefcase. Machlah handed it to Moore, who opened the briefcase and examined the contents. Moore then asked the cabdriver to open the trunk, and he removed the suitcase and closed the trunk, put the suitcase on the car and opened and searched it. When in excess of ten pounds of marijuana was visible inside the suitcase, Machlah told Moore "That's not my suitcase." Machlah testified he was never asked for his permission to open the suitcase and he did not give permission to anyone to search the suitcase.

Machlah and Kharrazian were arrested and charged with dealing in marijuana, a class C felony, under IND. CODE 35–48–4–10. At a pretrial hearing, the Judge granted the defendants' motion to suppress evidence of the contents of the suitcase. The State now appeals.

### ISSUES

The State presents two questions for our consideration:

I. Whether the defendants had a legitimate expectation of privacy in the suitcase and therefore may challenge its

search and seizure as a violation of their own Fourth Amendment rights?

II. Whether the suitcase was abandoned by defendant Machlah by one oral disclaimer of ownership after Officer Moore searched the suitcase and discovered the contraband.

## DECISION

The seizure and search of the suitcase was conducted without a search warrant. In such cases, the search is presumed unreasonable and the State has the burden to show that the search falls within an exception to the warrant requirement. *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 215.

Here, the prosecution attempted to show the search of the suitcase was made with consent. A valid consent is a recognized exception to the warrant requirement. *Barnett v. State* (1986), Ind.App., 493 N.E.2d 1286, 1288. The police officers testified that Defendant Machlah gave permission to search the suitcase (R. 74–75; R. 131–132, 142–143). Defendant Machlah, however, testified that he did not consent to the search of the suitcase. (R. 145–152).

■ The State had the burden to show that consent was given freely and voluntarily. *Stabenow v. State* (1986), Ind.App., 495 N.E.2d 197, 202. However, as the motion to suppress was granted, the trial court must have concluded that the State did not sustain its burden of proof. Thus, the State is appealing from a negative judgment and, therefore, must show that the trial court's ruling was contrary to law. *State v. Blake* (1984), Ind.App., 468 N.E.2d 548, 550. The trial court's determination will be affirmed on appeal unless clearly erroneous, and will be reversed only where the uncontradicted evidence will support no reasonable inference favoring the ruling. *Blake, supra*, 468 N.E.2d at 550.[1]

### I. *Expectation of Privacy*

The State claims the trial court's ruling was contrary to law because the uncontroverted evidence shows the Defendants lacked standing to challenge the search of the suitcase.

The State challenges the defendants' right to contest the legality of a search and seizure. Machlah argues he had a personal, proprietary or possessory interest in the suitcase searched and therefore his own constitutional rights have been infringed. Defense counsel present little argument regarding Kharrazian's potential interest in the suitcase.[2]

There is no "automatic standing" to contest the legality of a search and seizure for a defendant charged with a crime of possession. *United States v. Salvucci* (1980) 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619. A criminal defendant must show that his *own* constitutional rights have been infringed. Vicarious assertion of another's Fourth Amendment rights is insufficient. A claim of ownership alone is no longer sufficient to gain suppression.

"The recent Supreme Court decisions have recast the requirements for successfully asserting a Fourth Amendment claim. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court described the standing analysis as artificial and concluded 'the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably interwined concept of standing.' *Id.* at 139, 99 S.Ct. at 428. Because Fourth Amendment rights are personal and may not be vicariously asserted, *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Court then phrased the question as

1. Because of the conflict in the evidence on the consent issue, the State concedes it cannot demonstrate that the trial court's ruling on that issue was contrary to law.

2. In his brief, Kharrazian presents an alternate version of the facts. He claims he joined Ma-

chlah before Machlah placed the suitcase in the trunk of the cab. However, neither officers Schmidt, Moore nor defendant Machlah, the only three witnesses, testified regarding this information at the suppression hearing.

'whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it.' 439 U.S. at 140, 99 S.Ct. at 428. The relevant inquiry has thus become the defendant's legitimate expectation of privacy, a phrase derived from the language of *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)."

*United States v. Hawkins* (11th Cir.1982), 681 F.2d 1343, 1345. The initial inquiry, then, is whether a defendant had a personal and legitimate expectation of privacy in the area searched or the article seized. *Rakas, supra,* 439 U.S. at 140, 99 S.Ct. at 428–429. *See also Humes v. State* (1981), Ind., 426 N.E.2d 379; *Hope v. State* (1982), Ind., 438 N.E.2d 273; *Johnson v. State* (1985), Ind., 472 N.E.2d 892.[3]

■ Assuming Machlah had a subjective expectation of privacy, this expectation must also be objectively reasonable. Ownership and possession, while not dispositive of expectation of privacy, are relevant factors. *Salvucci, supra.* Machlah was presumably accompanied by the suitcase on his flight from Florida. The suitcase was in his exclusive actual possession and control after he picked it up from the baggage claim area. Machlah placed the suitcase in the trunk of the cab, retaining constructive possession of the suitcase while it was in the trunk. No one else had either possession or control after Machlah retrieved it from baggage claim and before the taxicab driver opened the trunk at Moore's request and Moore seized the bag. Because of Machlah's actual and then constructive possession of the suitcase before the seizure, we find the evidence is sufficient for the trial court to conclude Machlah had a legitimate expectation of privacy in the suitcase. Therefore the trial court could rea-

sonably find Machlah's own constitutional right to be free of unreasonable search and seizure has been violated and he may challenge the legality of the search.

■ However, as to defendant Kharrazian, we conclude there was no evidence presented to show he had a legitimate expectation of privacy in the suitcase. In fact, no evidence was presented to show he was even aware of the suitcase in the trunk. He was never observed with the suitcase. Kharrazian arrived on the same Florida flight and shared a cab with Machlah. Kharrazian was never in possession of the suitcase and no evidence has been offered to show he owned the suitcase or that the bag was ever under his control. Here, occupying space within the cab does not constitute an exertion of control over a suitcase in the cab's trunk. *See, Correll v. State* (1985), Ind., 486 N.E.2d 497 (defendant passenger exercised control over car when he forced driver at gunpoint to follow his directions). Accord, *In Re Dulaney* (1985), 74 N.C.App. 587, 328 S.E.2d 904; *Beardsley v. State* (1985), Tex.App., 696 S.W.2d 214. We conclude Kharrazian had no legitimate expectation of privacy in the suitcase so his own constitutional rights were not violated by the warrantless search. Therefore, the trial court's grant of Kharrazian's motion to suppress was erroneous and he may not challenge the legality of the search and seizure.

## II. *Abandonment*

The State argues Machlah abandoned any legitimate expectation of privacy in the seized bag because he denied ownership to Schmidt after the bag had been removed from the trunk, searched, and contraband discovered. Schmidt testified Machlah told him, "That's not my bag." (Record, p. 77, 89, 98.)

3. In *Johnson,* defendants Michael Johnson, Ronald Johnson, and Gary Linger were convicted of attempted murder, rape, criminal deviate conduct and criminal confinement. On appeal, each sought to challenge the trial court's failure to grant his motion to suppress evidence. The court examined whether each defendant had any personal and legitimate expectation of privacy in the home and the automobile which were searched. Linger was found to lack a privacy interest in both the house and the car. Michael, however, had a legitimate expectation of privacy in the home because he owned it and lived in it. Michael had no expectation of privacy in Ronald's car. Ronald had an expectation of privacy in the car he owned, and also in Michael's house because Ronald lived there.

Machlah's counsel asserts he did not deny knowledge or ownership of the bag until he observed its contents because he then realized he made a mistake at the airport and had picked up the wrong bag. Machlah concedes he then told Schmidt, "That's not my bag."

The State argues Machlah's disclaimer of ownership of the suitcase and its contents ended any privacy expectation he may have had *before* the bag's seizure and constitutes abandonment under *U.S. v. Hawkins, supra.* The State claims Machlah's abandonment is not affected by the fact that the disclaimer came after the search had yielded the illegal substance, and relies upon *U.S. v. Canady,* (5th Cir.1980), 615 F.2d 694. The State maintains that society does not recognize a privacy interest in another person's property, even if it is mistakenly in the defendant's possession for a time.[4]

In *Hawkins,* the Eleventh Circuit Court of Appeals found Hawkins did not have an expectation of privacy in a suitcase where, *before and during the search,* he vigorously and repeatedly disclaimed any knowledge of the suitcase and the woman who was carrying it. The court upheld Hawkin's convictions on conspiracy, racketeering and distributing heroin after it concluded he could not assert the warrantless search of his suitcase violated his Fourth Amendment rights. The court reasoned:

"Although on the basis of these facts we hold Hawkins' actions and statements to the officers at the time of the investigation reveal a lack of reasonable expectation of privacy in the suitcase, we do not mean to express by our ruling that a defendant must necessarily claim a property interest in the article at the time of the search, or that every type of statement disclaiming ownership of an article

forecloses the establishment of a reasonable expectation of privacy therein. Because an assertion of ownership is not, by itself, dispositive of the right to claim the protection of the fourth amendment, it follows that a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim. Hawkins' unsolicited and violent protests that he knew nothing about the woman or the suitcase are so inconsistent with a claim of privacy interest in the suitcase that he cannot later successfully assert that claim."

*Hawkins, supra,* 681 F.2d at 1346.

In *Canady,* suppression was denied when repeated disclaimers of ownership of a suitcase while passing through airport security checkpoints were held to preclude any legitimate expectation of privacy in the suitcase or its contents. Seeking to board a flight to another state, Canady consented to a search of the suitcase by a security officer and then disclaimed ownership at the airport checkpoint when questioned about its contents. Canady repeated this conduct at a second checkpoint, and then denied ownership to three officers before and after the search. Canady testified at trial that he did not own the suitcase and knew nothing about it. The court concluded Canady voluntarily abandoned the bag *before* its seizure and had no expectation of privacy in the suitcase or its contents deriving from a property interest or from any understanding "recognized and permitted by society", *Canady, supra,* 615 F.2d, at 697.

4. We note the question of ownership of the suitcase and its contents was not raised at the suppression hearing by either the State or the defendants. The Supreme Court has noted that distinctions developed in property law ought not necessarily to control in criminal law:

"Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in

*Jones* [*Jones v. U.S.,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697] and in *Katz* [*Katz v. U.S.,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576]. But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment."

*Rakas, supra,* 439 U.S. at 144, n. 12, 99 S.Ct. at 431, n. 12.

In *Miller v. State* (1986), Ind.App., 498 N.E.2d 53, this court examined the question of voluntary abandonment of a gym bag containing a sawed-off shotgun. The defendant argued the trial court erred in admitting the shotgun into evidence during his trial for possession of the shotgun, because the shotgun was the fruit of an illegal search. This court reasoned:

"Whether Shawn abandoned the property *prior* to the search and thus deprived himself of Fourth Amendment protection rests on a determination of whether he voluntarily relinquished possession or control of the bag under circumstances that indicated he retained no justified expectation of privacy in it. *See generally* 1. W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.6(b) (1978); 1 C.J.S. Abandonment § 3 (1985); 40 A.L.R. 4th 381 §§ 21–25 and cases cited therein.

'In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.' *LAFAVE, supra,* at 368. *See also United States v. Colbert* (5th Cir. 1973), 474 F.2d 174.

A number of courts have found abandonment from disclaimer of ownership in response to police questioning. *See LAFAVE, supra,* at 371 n. 51 and cases cited therein. The question is closer when a denial of ownership is combined with a claim that the object to be searched belongs to another. *See, e.g., United States v. Richards* (5th Cir.1981), 638 F.2d 765, *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638; *State v. Walker* (1978), 119 Ariz. 121, 579 P.2d 1091; *State v. Casey* (1982), 59 N.C.App. 99, 296 S.E.2d 473; *People v. Grainger* (1982), 117 Mich.App. 740, 324 N.W.2d 762. The courts have considered several factors, including whether the defendant willingly relinquished possession of the object, whether the defendant asserted a lawful possessory claim to it, and whether the defendant attempted to conceal the object or its contents from police view. The test to be applied is an objective one, considering the words used, the conduct exhibited, and other objective facts such as where and for what length of time the property is relinquished and the condition of the property. *See O'Shaughnessy v. State* (1982), Fla.Dist. Ct.App., 420 So.2d 377.

The facts support a finding that Shawn voluntarily relinquished possession and control of the bag under circumstances that indicate he retained no justified expectation of privacy in it. He relinquished possession of the bag without having been asked or forced to do so, he asserted no lawful possessory claim to it, and he made no attempt to conceal the bag or its contents from police view. By walking a distance of six feet to place the bag at his companion's feet, and by stating, in response to Officer Garner's inquiry, that the bag was not his but that it belonged to his companion, Shawn purposefully disassociated himself from the bag and its contents. Thus, the evidence supports a finding of abandonment." (emphasis added).

*Miller, supra,* 498 N.E.2d at 56. *See also, State v. Williams* (1983), Ind.App., 448 N.E.2d 54; *People v. Wilcher* (1986), 145 Ill.App.3d 309, 99 Ill.Dec. 266, 495 N.E.2d 1001; *People v. Wilson* (1986), 141 Ill. App.3d 156, 95 Ill.Dec. 848, 490 N.E.2d 701.

In a factual setting similar to this case, the Colorado Court of Appeals found the defendant had not abandoned the suitcase at issue, although he denied ownership *after* the police seized two suitcases, since the defendant had been actively exercising control over them by putting the two bags into a taxicab when the bags were seized by police. *People v. Baird* (1981), Colo. App., 628 P.2d 161. The court concluded the trial court had erred in refusing to suppress from evidence the marijuana found in the suitcases and reversed the defendant's conviction for possession of dangerous drugs with intent to dispense.

The North Carolina Court of Appeals reached the same result in *State v. Casey* (1982), 59 N.C.App. 99, 296 S.E.2d 473. The court held defendant's denial of owner-

ship of a bag and briefcase which were in his possession *after* the police seized the bag and briefcase did not constitute voluntary abandonment nor extinguish his reasonable expectation of privacy where the defendant was in actual physical possession and made no effort to relinquish possession of the bags which he claimed belonged to another, until he was requested to do so by the police. The court found that during his encounter with police, the defendant had the right to exclude all others from the bags by virtue of his right of exclusive possession and control, which gave rise to a legitimate expectation of privacy in the contents. The court reasoned:

> "Casey was in actual physical possession of the yellow plastic bag for the entire duration of the encounter with [officers] Harkey and Davis. The officers testified that Casey never set the bags down or made any effort to let go of them until requested to do so by the officers themselves. Nor was Casey in wrongful possession of the bags and therefore unable to claim standing to object to the search. (citations omitted). During the encounter, Casey had the right to exclude all others from the bags by virtue of his right of possession and control. This right in turn gave rise to a legitimate expectation of privacy in the contents of the bags. That expectation was not lost by virtue of Casey's informing the officers, at their request, that the owner of the bags was Mr. Sport."

*Casey, supra,* 296 S.E.2d at 475.[5] *See also* 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3(f) 2d Ed.1987).

Here, there was conflicting evidence concerning Machlah's expectancy of privacy. Clearly he exhibited exclusive physical possession of the suitcase for a substantial period of time. Thus, in order to overturn the trial court's resolution of this evidence, and rule in favor of the State, it appears to us that we must determine, as a matter of law, Machlah's one statement "That's not my suitcase", made *after* search and seizure of the suitcase, constitutes voluntary abandonment, despite other conflicting evidence, and extinguishes his expectation of privacy before seizure. We note that a reasonable expectation of privacy means an expectation at the time of the search, not after police have completed the search. Here we must examine Machlah's conduct before Moore seized the suitcase from the trunk of the taxicab to determine, by objective standards, whether Machlah voluntarily abandoned the suitcase.

■ The question of abandonment is primarily a question of intent. Intent may be inferred from words, acts, and other objective facts. Abandonment rests upon whether the defendant so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it *at the time of the search. See U.S. v. Kendall* (9th Cir.1981), 655 F.2d 199; *U.S. v. Jackson* (9th Cir.1976), 544 F.2d 407; *U.S. v. Pruitt* (9th Cir.1972), 464 F.2d 494. After the police have seized the item, the question becomes one of voluntary consent.

■ The facts support the trial court's conclusion that Machlah did not voluntarily relinquish possession and control of the bag by placing it in the trunk of the taxicab. Although Machlah did not claim ownership of the suitcase, he did not state who did own the bag. Although Machlah did not attempt to conceal the suitcase or its contents from police view, Machlah was undisputedly in sole possession of the suitcase and exercised exclusive control over it until officer Moore opened the trunk to remove the bag and search it. We reject the State's position that Machlah's one statement, after the search and discovery of the contraband, "That's not my suitcase", is dispositive and therefore the trial

---

5. Both *Baird* and *Casey* are noted in 40 A.L.R. 4th 381 §§ 21–25. The other numerous cases cited in the note involve situations where the defendant disclaimed ownership *before* police seizure of the item.

court may not consider the totality of the circumstances in determining whether Machlah had a personal and legitimate expectation of privacy in the suitcase. His statement is not so inconsistent with a prior claim of privacy interest in the bag that he cannot later assert his privacy interest.

We affirm the trial court's grant of defendant Machlah's motion to suppress evidence and reverse the trial court's grant of defendant Kharrazian's motion to suppress evidence.

SHIELDS, P.J., concurs.

CONOVER, P.J., concurs in result.